UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

MEYLIN DEL CARMEN MARTINEZ-
ROMERO,                                                                    Petitioner,

v.                                                         Civil Action No. 4:25-cv-182-DJH

KRISTI NOEM, Secretary, Department of
Homeland Security et al.,                                                  Respondents.

* * * * *

## MEMORANDUM AND ORDER

Petitioner Meylin Del Carmen Martinez-Romero, a noncitizen resident of Indiana currently

detained in the Western District of Kentucky, seeks a writ of habeas corpus pending her appeal of

an order of removal.  She alleges that her detention by immigration authorities violates the

Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.  (Docket

No. 1)  The Court granted Martinez-Romero's unopposed motion to forgo a show-cause hearing

given the absence of a factual dispute (D.N. 8), and the parties have submitted briefs setting out

their respective legal arguments (D.N. 5, D.N. 6).  After careful consideration, the Court will grant

Martinez-Romero's petition for the reasons explained below.

**I.**

Martinez-Romero entered the United States on May 20, 2022, near Lukeville, Arizona.

(D.N. 1, PageID.4 ¶ 15; D.N. 5-2, PageID.28)  Upon entering, she was "detained by United States

Customs and Border Protection, vetted, served a Notice to Appear (NTA)," and released into the

United States.  (D.N. 1, PageID.4 ¶ 15; D.N. 5-2, PageID.28)  "Over the next few years, she

complied [with] the Department of Homeland Security's release requirements" by reporting to

U.S. Immigration and Customs Enforcement (ICE) as directed and appearing at her court dates.

(D.N. 1, PageID.4 ¶ 16)   Martinez-Romero also applied for asylum and obtained work authorization. (*Id.*) On June 2, 2025, she appeared before an immigration judge in Indianapolis, Indiana, "for adjudication of her asylum application." (*Id.* ¶ 17) The immigration judge denied the application and ordered that she be removed from the United States. (*Id.*; D.N. 5-1, PageID.23–25; D.N. 6-1, PageID.105) Martinez-Romero filed a Notice of Appeal of the immigration judge's decision on June 17, 2025, to the Board of Immigration Appeals (D.N. 6-2, PageID.106–07); that appeal remains pending.[1] (D.N. 6-1, PageID.105) On June 27, 2025, Martinez-Romero "reported to ICE as directed"; she "believed that this would be a routine check[-]in" but was detained.[2] (D.N. 6, PageID.98 ¶ 6; D.N. 1, PageID.4 ¶ 19; D.N. 5-2, PageID.27–28) She remains detained at the Grayson County Detention Center. (D.N. 1, PageID.3 ¶ 10)

Martinez-Romero seeks a writ of habeas corpus against Grayson County Jailer Jason Woosley, Acting Director of ICE Todd Lyons, Department of Homeland Security Secretary Kristi Noem, and U.S. Attorney General Pamela Bondi. (*Id.* ¶¶ 11–14) Martinez-Romero alleges that her detention without a bond hearing violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226, and due process under the Fifth Amendment.[3] (*See id.*, PageID.7–8) She asks the Court to order her immediate release and a bond hearing pursuant to 8 U.S.C. § 1226. (*Id.*, PageID.2 ¶ 3) Respondents argue that (1) § 1225's mandatory-detention framework applies to Martinez-Romero "regardless of the duration of [her] presence in the United States, [her] distance

---

[1] The immigration judge's order is stayed while an appeal is pending. *See* 8 C.F.R. § 1003.6(a).

[2] The arrest warrant authorized detention under section 236 of the Immigration and Nationality Act (D.N. 5-3, PageID.30), which is codified at 8 U.S.C. § 1226. *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025). The Court uses United States Code citations in this Memorandum and Order.

[3] The petition contains only one count alleging violation of due process under the Fifth Amendment. (D.N. 1, PageID.7–8 ¶¶ 28–31) Throughout the petition, however, Martinez-Romero asserts that her detention violates the Immigration and Nationality Act as well. (*See, e.g.*, *id.*, PageID.7 ¶ 26)

from the border when apprehended, or any affirmative acts taken to secure lawful status or relief";

(2) Martinez-Romero, as an applicant for admission, "necessarily is 'seeking admission'" under

§ 1225; (3) Respondents' "reading of Section 1225(b)(2) does not render Section 1226(c)

superfluous"; and (4) Martinez-Romero's detention does not violate due process under § 1225

because she "received all process due in connection with [her] removal proceedings."[4]  (*See*

D.N. 5-4, PageID.62–63, 91)

## II.

### A.    Immigration and Nationality Act

Martinez-Romero asserts that she is detained under § 1226 of the Immigration and

Nationality Act and is thus entitled to a bond hearing.  (*See* D.N. 1, PageID.6 ¶ 25)  Respondents

argue that § 1225 governs her detention, incorporating by reference arguments in its appellate brief

from *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29,

2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025).  (*See generally* D.N. 5-4)

Respondents' arguments are nearly identical to those made in *Alonso v. Tindall*, No. 3:25-

cv-652-DJH, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025).  The Court thus summarizes and

incorporates by reference its reasoning and determination from *Alonso*.  There, the Court found

that the petitioner was an applicant for admission as an "alien present in the United States who

ha[d] not been admitted," *id.* at *5 (quoting § 1225(a)(1)), but that he was not seeking admission

because he had resided in the United States for an extended period. *See id.* at *5, *7.  The Court

---

[4] Respondents do not contest that the Court has jurisdiction to review Martinez-Romero's petition (*see* D.N. 5-4, PageID.47).  *See Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) ("[28 U.S.C. § 2241] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))).  Nor do Respondents argue whether Martinez-Romero must exhaust her administrative remedies. (*See generally* D.N. 5)  Thus, the Court need not address these issues.

concluded that the petitioner was detained under § 1226(a), and thus entitled to a bond hearing, because he was "arrested and detained [on a warrant issued by the Attorney General] pending a decision on whether [he was] to be removed from the United States."[5]   *Id.* at \*5 (quoting § 1226(a)); *id.* at \*8.  Although the petitioner in *Alonso* had been residing in the United States for more than a decade, *see id.* at \*1, and Martinez-Romero has lived in the United States for approximately three and a half years (D.N. 5-2, PageID.28), this Court and others have "found § 1225 inapplicable where petitioners had resided in the United States for only a handful of years." *Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at \*2 (W.D. Ky. Nov. 20, 2025) (citations omitted); *see also Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at \*9 (E.D.N.Y. Oct. 6, 2025) ("[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering.").  Martinez-Romero's "[2022] interaction with immigration authorities and subsequent release do not bar such a finding." *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at \*4 (W.D. Ky. Nov. 26, 2025) (citation omitted).

Respondents argue that § 1225(b)(2) applies "regardless of the duration of the alien's presence in the United States, the alien's distance from the border when apprehended, or any affirmative acts taken to secure lawful status or relief."  (D.N. 5-4, PageID.62)   The Court disagrees, having previously concluded that "[t]he phrase 'seeking admission,' though not defined in [§ 1225], 'implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" *Alonso*, 2025 WL 3083920, at \*6 (quoting *Lopez-Campos*, 2025 WL 2496379, at \*6).  Respondents also argue that § 1225 "makes clear that

---

[5] For individuals arrested under § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge.  *Alonso*, 2025 WL 3083920, at \*5 (citations omitted).

an alien who is an 'applicant for admission' necessarily is 'seeking admission.'" (D.N. 5-4, PageID.63 (citation omitted))  The Court has likewise rejected this argument, explaining that "not all applicants for admission are automatically seeking admission," *Alonso*, 2025 WL 3083920, at *6, and that "the Court must . . . give effect to all words in a statute." *Id.* at *7 (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)); *see also Ramirez v. Lewis*, No. 4:25-cv-143-RGJ, 2025 WL 3553676, at *8 (W.D. Ky. Dec. 11, 2025) ("Reading [§ 1225] as the United States contends would either ignore the plain meaning of 'seeking' . . . or, more simply, [read out] 'seeking' directly from the statute." (emphasis omitted)).

Respondents additionally argue that their position "does not render Section 1226(c) superfluous." (D.N. 5-4, PageID.63)  They claim that "[a]lthough Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect." (*Id.*, PageID.80)  As the Court explained in *Alonso*, the recent amendment to § 1226, codified in § 1226(c)(1)(E), "applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of 'burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person.'" 2025 WL 3083920 at *6 (quoting § 1226(c)(1)(E)(ii)).  "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (citation omitted).  Thus, despite overlap between § 1225(b) and § 1226(c) regarding noncitizens who have not been admitted or paroled, the Court concludes that Respondents' reading of § 1225 would render § 1226(c) superfluous. *See*

*id.* ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted [under § 1225(b)(2)(A)],' ICE would never need to rely on § 1226(c)(1)(E) to detain them." (citations omitted)).[6]

Consistent with its prior decisions addressing the same issue, the Court concludes that Martinez-Romero is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Singh*, 2025 WL 3298080, at \*5; *Salinas*, 2025 WL 3243837, at \*3; *Lopez*, 2025 WL 3217036, at \*3; *Alonso*, 2025 WL 3083920, at \*8.

**B.    Due Process**

Martinez-Romero asserts that her detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.7–8 ¶¶ 28–31)  Respondents argue that "Section 1225(b)(2) does not afford Petitioner the ability to obtain release on bond, and so the Due Process Clause does not either."  (D.N. 5-4, PageID.90)  Because Martinez-Romero is detained under § 1226, not § 1225, Respondents' argument as to the due process required by § 1225(b)(2) is irrelevant.[7] *Singh*, 2025 WL 3298080, at \*5.

---

[6] Respondents also maintain that their position is consistent with the Supreme Court's opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). (*See* D.N. 5-4, PageID.87–89) *Jennings* considered whether §§ 1225(b), 1226(a), and 1226(c) require providing periodic bond hearings to noncitizens detained under those provisions. *See* 583 U.S. at 286, 291.  As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)."  (D.N. 5-4, PageID.89)   Whether Respondents' position is consistent with *Jennings* is thus not dispositive here.  In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."  583 U.S. at 303.  The opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens *seeking admission* into the [United States]."  *Id.* at 289 (emphasis added).  Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

[7] Respondents additionally cite *Demore v. Kim*, 538 U.S. 510 (2003), for the proposition that "statutory provisions denying bond during administrative removal proceedings do not violate the due process clause."  (D.N. 5-4, PageID.90)  But *Demore* concerned whether § 1226(c)'s mandatory-detention framework required individualized bond hearings for removable noncitizens

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera*, 2025 WL 2690565, at *6).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Martinez-Romero "has a significant private interest in not being detained." *Id.*; *Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9.  Moreover, "the risk of erroneously depriving [Martinez-Romero] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos*, 2025 WL 2496379, at *9; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted).  But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily

---

who had "been convicted of one of a specified set of crimes." 538 U.S. at 513.  Because § 1226(c) is not at issue here, the Court does not find *Demore* relevant to the due process analysis.

follow here." *Hyppolite*, 2025 WL 2829511, at \*15.  Thus, because all three *Mathews* factors

weigh in Martinez-Romero's favor, the Court concludes that her detention violates her due process

rights.  *See Ramirez*, 2025 WL 3553676, at \*12; *Singh*, 2025 WL 3298080, at \*5–6; *Barrera*, 2025

WL 2690565, at \*6–7.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is

hereby

**ORDERED** as follows:

(1)    Martinez-Romero's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**.

Respondents are **DIRECTED** to immediately release Martinez-Romero, and, if she is arrested and

re-detained, provide her with a bond hearing before a neutral Immigration Judge in accordance

with 8 U.S.C. § 1226(a).  Respondents **SHALL** certify compliance with the Court's Order by a

filing on the docket.  While release should be immediate, notice of the release may be delayed until

**Monday, December 29, 2025**, due to the intervening holiday.

(2)    Upon receipt of the notice of compliance, this matter will be **CLOSED**.

December 23, 2025

David J. Hale, Chief Judge
United States District Court

8